UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| GREGORY ALAN APPLEGATE, ) | CASE NO. 05-67759 |
| ) | |
| Debtor. ) | ADV. NO. 07-6218 |
| ) | |
| ANTHONY J. DEGIROLAMO, ) | JUDGE RUSS KENDIG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OF OPINION |
| ) | (NOT INTENDED FOR |
| SANDRA GARRETT, ) | PUBLICATION) |
| ) | |
| Defendant. ) | |

Now before the Court is the motion for summary judgment filed by Plaintiff Anthony J. DeGirolamo ("Plaintiff"), the chapter 7 trustee in the case under Title 11 in which this adversary proceeding arises. Plaintiff filed the instant adversary on November 16, 2007, alleging that Sandra Garrett ("Defendant") received preferential and/or fraudulent transfers from Debtor, a convicted Ponzi scheme operator, in the ninety days prior to the involuntary Chapter 7 filing against Debtor.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(F) and (H). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Debtor Gregory Alan Applegate ("Debtor") began operating a Ponzi scheme. Debtor enticed investors with oral guarantees of tax-free returns if they would invest in a hedge fund operated through his company, Applegate Investments. Debtor claimed that he would take any surplus above the guaranteed rate of return on the securities in which he proposed to invest as his fee, and that if returns fell below that guaranteed rate, he would make them up out of his own pocket. Debtor did not invest any of his investors' money in the securities; instead, he paid prior investors with the funds received from new investors. He also diverted considerable sums to his own purposes.

The Ponzi scheme began to unravel in August of 2005, when an investor's financial advisor examined one of the false monthly statements Applegate produced for his clients. The advisor discovered that the dividends and share prices on the statement did not match the actual market prices for the securities putatively held by Debtor's hedge fund. As more and more facts began to come to light, Applegate voluntarily went to the Ashland Police Department and the FBI and provided them with a written statement admitting that he had run a Ponzi scheme and knew that it was an illegal investment practice. On June 7, 2006, Applegate began a five-year prison sentence.

This case has given rise to a considerable number of adversary proceedings, most coming in waves of preferential and fraudulent transfer complaints to recover from those Applegate paid in full or in part on the eve of bankruptcy, leaving others with nothing. The instant adversary is one of these. Plaintiff filed a seven-count complaint against Defendant on November 16, 2007. Count I of the complaint seeks to recover $45,807.36 in preferential transfers from Debtor to Defendant made within the ninety days prior to the petition date. Count II seeks turnover and accounting of all transfers from Debtor to Defendant. Counts III, IV, V, VI, and VII all seek recovery of $1,271.16 in fraudulent transfer payments made outside the ninety day window but within two years of the petition date; the former two counts invoke federal law, and the latter three, Ohio law.

Within the ninety day window prior to the involuntary petition against Applegate, Defendant received two checks in the amounts of $357.36 and $45,450.00, a total of $45,807.36. Within the two year window prior to Applegate's bankruptcy, Defendant received the preceding amounts and four additional checks, each in the amount of $317.79, a total of $1,271.16. Combined, Defendant received a total of $47,078.52 from Applegate within two years of the petition date. In addition, by operation of Fed. R. Civ. P. 36(a)(3) due to Defendant's failure to answer duly served requests for admissions, the Court treats as established the fact that Defendant was aware that Applegate was running a Ponzi scheme at the time all of these transfers were made.

## LEGAL ANALYSIS

### I. Standard of Review

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The moving party carries the initial burden and must "identify[] those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing F.R.C.P. 56(c)). Evidence, including all reasonable inferences, considered on a motion for summary judgment must be viewed in the light most favorable to the non-movant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986). The moving party must demonstrate that no reasonable trier of fact could make a finding for the non-moving party. See Calderone v. U.S., 799 F2d 254, 259 (6th Cir. 1986) (quotation omitted). If the moving party satisfies its burden, the non-movant cannot merely rest on the pleadings, but must introduce specific evidence demonstrating the existence of issues of fact. Huizinga v. U.S., 68 F.3d 139 (6th Cir. 1995) (citing Celotex Corp., 477 U.S. at 324).

## II. Preferential Transfers

Preferential transfers are avoidable under 11 U.S.C. § 547(b), with limited exceptions that do not apply in this case. A preferential transfer is any transfer of an interest of the debtor in property--

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> 
> (5) that enables such creditor to receive more than such creditor would receive if--
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Id. The debtor is presumed to have been insolvent on and during the 90 days prior to the petition date. 11 U.S.C. § 547(f). Investors in Ponzi schemes are considered creditors of the scheme, and payments to those investors to settle their accounts are considered payments for or on account of those antecedent debts. See Noland v. Morefield et al. (In re National Liquidators, Inc.), 232 B.R. 915, 920-21 (Bankr. S.D. Ohio 1998).

Debtor wrote Defendant two checks within ninety days of the petition date, one for $357.36 on August 1, 2005, and one for $45,450.00, on September 8, 2005. Defendant deposited each of these checks shortly after each was issued. It is also not disputed that these transfers enabled Defendant to receive a greater share of the estate assets than she would have as a claimant in the chapter 7 liquidation. These transfers are therefore transfers to a creditor on account of an antecedent debt, made while the debtor was insolvent, within ninety days prepetition, and which enabled Defendant to receive more than she would have in the chapter 7 liquidation. The transfer is thus avoidable under § 547(b).

## III. Fraudulent Transfers

Plaintiff also seeks to recover $1,271.16 in fraudulent transfer payments under five separate provisions of federal and state law. Plaintiff first moves under 11 U.S.C. § 548(a)(1)(A), which allows the trustee to avoid any transfer of an interest of the debtor in property within 2 years before the date of the filing of the petition if the debtor

> made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

Id. Plaintiff also moves under 11 U.S.C. § 548(a)(1)(B), which allows for avoidance of transfers in the same time frame if the debtor

> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)
>> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Id. In his complaint, Plaintiff seeks to avoid the same transfer under certain provisions of the Ohio Uniform Fraudulent Transfer Act (UFTA): Ohio Rev. Code §§ 1336.04(A)(1), 1336.04(A)(2), and 1336.05; however, Plaintiff did not move for partial summary judgment on his claims under UFTA.

Debtor transferred $1,271.16 to Defendant within two years of the filing of the petition not otherwise accounted for in the above discussion of Debtor's preferential transfers. Debtor received less than a reasonably equivalent value in exchange; as a matter of law, if the only thing a debtor receives in exchange for the transfer is the use of the transferee's money to perpetuate the scheme, nothing of value is added to the estate to compensate for the diminishment caused by the transfer. In re Taubman, 160 B.R. 964, 986 (Bankr. S.D. Ohio 1993). In addition, Debtor was insolvent when he transferred money to Defendant. The promised rates of return, because they are in excess of any real investment, render a Ponzi scheme operator insolvent from the inception of the scheme. Id. at 978. The Court also finds that the same circumstances that justified a factual finding of undercapitalization *per se* in Taubman apply here. See Taubman at 986. Plaintiff has carried his burden of proving his cause of action under 11 U.S.C. § 547(a)(1)(B).

Plaintiff has also carried his burden under 11 U.S.C. § 548(a)(1)(A). It is appropriate to find actual intent to defraud creditors from Debtor's active participation in a Ponzi scheme. Taubman at 983. The fraudulent transfer statute does not require Plaintiff to prove any fraudulent intent on the part of Defendant.

## IV. Conclusion

No genuine issues of material fact exist; Plaintiff is entitled to partial summary judgment on all counts for which he moved for it. An order in accordance with this opinion will be entered contemporaneously.

RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

Anthony J. DeGirolamo
Courtyard Centre
Suite 625
116 Cleveland Avenue NW
Canton, OH 44702

John P. Archer
One Cleveland Center
1375 E. 9th St.
Cleveland, OH 44114

Sandra Garrett
4505 North Via Entrada
#137
Tucson, AZ 85718